UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

CHRISTOPHER A. HINRICHS,

Plaintiff,

v. Case No. 2:26-cv-909-KCD-KRH

CHARLOTTE COUNTY FL, SERVE: JOSEPH TISEO, CHAIRS OF THE BOARD OF COUNTY COMMISSIONERS; COUNTY ADMINISTRATOR HECTOR L FLORES, INDIVIDUAL CAPACITY; COUNTY ADMINISTRATOR EMILY S LEWIS, INDIVIDUAL CAPACITY; AND HR DIRECTOR MARY L SHELLEY, INDIVIDUAL CAPACITY;

Defendants,
___________________________________/

**ORDER**

Plaintiff Christopher Hinrichs, a former employee relations manager for Charlotte County, alleges that the County and its top administrators abruptly stripped him of his job without the constitutionally mandated pre-termination hearing. (Doc. 1.)[1] Defendants now move to dismiss the complaint, insisting that Hinrichs was merely placed on administrative leave and afforded a full hearing before the ax officially fell. (Doc. 11.) Because

[1] Unless otherwise indicated, all internal quotation marks, citations, case history, and alterations have been omitted in this and later citations.

Hinrichs plausibly alleges that he was handed a termination notice days before any hearing took place, Defendants' motion raises a factual dispute that cannot be resolved at this stage.

## I. Background

Because this case arrives on a motion to dismiss, the Court accepts the factual allegations in the complaint as true. *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). Hinrichs began working for Charlotte County in December 2024. By the summer, he had successfully completed his probationary period, securing a property interest in his continued public employment. (Doc. 1 ¶ B.) But trouble started after Hinrichs initiated disciplinary investigations into several union firefighters. (*Id.* ¶ D.) They allegedly retaliated by filing misconduct complaints against Hinrichs. (*Id.* ¶ F.)

Things came to a head on February 18, 2026. According to the complaint, Defendant Mary Shelley summoned Hinrichs to a conference room, presented him with the union's allegations, and demanded his immediate resignation. (*Id.* ¶ H.) When Hinrichs refused to quit, he was handed an "Employee Notice Form" terminating his employment, ordered to surrender his county-issued equipment, and escorted out of the building. (*Id.*)

What happened next forms the crux of this constitutional dispute. The termination notice Hinrichs received listed an effective date of February 18. Two days later, Defendant Emily Lewis officially signed off on the

termination form. (*Id.* ¶ I.) Yet on February 23—five days after he was marched out the door—the County held what it labeled a "pre-determination" hearing with Defendant County Administrator Hector Flores. (*Id.* ¶ J.) Flores issued a letter stating his decision to "uphold" the prior termination decision. (*Id.* ¶ K.)

Hinrichs now sues under 42 U.S.C. § 1983, claiming the County and its administrators violated his procedural due process rights by firing him first and asking questions later.

## II. Legal Standard

To survive a motion to dismiss, "a complaint must contain sufficient facts, accepted as true, to state a facially plausible claim for relief." *Galette v. Goodell*, No. 23-10896, 2023 WL 7391697, at *3 (11th Cir. Nov. 8, 2023). "A claim is facially plausible if it pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The question at this stage is not whether the plaintiff will ultimately win, but simply whether the complaint can proceed into discovery.

At this starting gate, we must accept the complaint's factual allegations as true and construe them in the light most favorable to the plaintiff. *Erickson*, 551 U.S. at 93-94. That benefit of the doubt, however, has limits. The court is not bound to accept legal conclusions dressed up as factual allegations. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A pleading

that offers nothing more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" will not unlock the courthouse doors. *Id.* In short, the plaintiff must tell a factual story that makes the defendant's liability plausible, not just point a finger and recite the law. *See, e.g.*, *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

Also relevant here, a pleading drafted by a pro se party is held to a less stringent standard than one drafted by an attorney. *Jones v. Fla. Parole Comm'n*, 787 F.3d 1105, 1107 (11th Cir. 2015). But "this leniency does not give a court license to serve as de facto counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action." *Campbell v. Air Jamaica Ltd.*, 760 F.3d 1165, 1168-69 (11th Cir. 2014). "[A] pro se pleading must suggest (even if inartfully) that there is at least some factual support for a claim; it is not enough just to invoke a legal theory devoid of any factual basis." *Jones*, 787 F.3d at 1107.

## III. Discussion

The Fourteenth Amendment "prohibits a state from depriving a person of life, liberty, or property, without due process of law." *Reams v. Scott*, No. 4:18CV154-RH/CAS, 2018 WL 5809967, at *1 (N.D. Fla. Nov. 6, 2018). When a public employee can be fired only for cause, that employee has a constitutionally protected property interest in continued employment. *See, e.g.*, *Hollis v. W. Acad. Charter, Inc.*, 782 F. App'x 951, 958 (11th Cir. 2019).

Once that property interest attaches, the state cannot unilaterally snatch it away. Instead, due process requires that the employee receive "some kind of a hearing" *before* being discharged. *Harrison v. Wille*, 132 F.3d 679, 684 (11th Cir. 1998). The requirements for this pre-termination hearing are not overly burdensome. The employee needs notice of the charges, an explanation of the employer's evidence, and a chance to respond. *Id.* at But the sequence is non-negotiable: the opportunity to be heard must come "before his termination." *Bailey v. Henry Cnty.*, No. 119CV03504LMMRDC, 2022 WL 4596653, at *5 (N.D. Ga. June 27, 2022).

Hinrichs alleges exactly this kind of sequencing failure. According to the complaint, he possessed a property interest in his position after passing his probationary period. Defendants do not contest that point. Instead, the dispute centers on when the actual termination occurred. Hinrichs claims he was fired on February 18. On that day, County officials handed him a notice that said he was terminated and escorted him from the building. (Doc. 1 ¶ H, Doc. 1-1 at 6.)[2] It was not until five days later that he received what the County labeled a "pre-determination" hearing. The result of that hearing, according to a letter from Defendant Flores, was to "uphold" the termination. (Doc. 1-1 at 9.)

---

[2] For ease of reference, the Court will cite the page numbers generated by its electronic filing system for all exhibits.

If Hinrichs's timeline is accurate, he has stated a textbook procedural due process claim. Being handed a termination notice *before* being given a chance to respond is precisely what the law forbids. *See, e.g.*, *Galbreath v. Hale Cnty., Alabama Comm'n*, 754 F. App'x 820, 828 (11th Cir. 2018).

Defendants attempt to short-circuit this claim by introducing their own version of events. They insist that Hinrichs was only placed on administrative leave on February 18. (Doc. 11 at 5.) The official termination did not happen until after the pre-deprivation hearing, so "Hinrichs was afforded due process." (*Id.* at 7.)

Defendants might ultimately be right about the sequencing. But at this stage, the Court must draw all reasonable inferences in Hinrichs' favor. And he has presented enough facts to suggest he was terminated before any process. The County's notice form lists an effective termination date of February 18. (Doc. 1-1 at 6.) He was also escorted from the premises and removed from the County's website. (Doc. 1 ¶¶ H-I.) And when the County Administrator later held a hearing on February 23, he sent a letter stating he would "uphold" the discipline. (Doc. 1-1 at 9.) You cannot uphold a decision that has not already been made. So even if Defendants insist Hinrichs was merely on administrative leave, he has pled a plausible claim that the County fired him first and went through the procedural motions later. That is enough to move the case forward.

The County separately argues that Hinrich has not pled municipal liability. (Doc. 11 at 7.) A municipality cannot be held liable under 42 U.S.C. § 1983 just because it employs someone who committed a constitutional violation. There is no *respondeat superior* liability for civil rights violations. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978). *Monell* is a "case about responsibility," and is meant to limit liability to acts that the local government body has "officially sanctioned or ordered." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478, 480 (1986). Under this framework, municipal liability requires "(1) an express policy; (2) a widespread practice so permanent and well-settled that it constitutes a custom; or (3) an act or decision of an officer with final policy-making authority." *Boudreaux v. McArtor*, 681 F. App'x 800, 804 (11th Cir. 2017).

Hinrichs checks at least two of those boxes. First, he plausibly alleges a widespread custom. As the County's former employee relations manager, Hinrichs claims to have first-hand knowledge of the County regularly finalizing terminations before holding any hearing. (Doc. 14 at 10.) Given his unique perspective, those allegations are enough. Second, Hinrichs might prevail if the officials who fired him wielded final policymaking authority. He points the finger directly at the County Administrator and the Deputy Administrator, claiming they made the ultimate call. Whether those individuals possessed final authority over employment decisions is a fact-

intensive question of state and local law. We simply cannot resolve that question on a motion to dismiss. For now, Hinrichs has laid out a plausible path to municipal liability.

The individual defendants—Flores, Lewis, and Shelley—also ask the Court to dismiss them based on qualified immunity. (Doc. 11 at 8.) Qualified immunity protects government officials from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). The doctrine gives officials breathing room to make reasonable but mistaken judgments, protecting "all but the plainly incompetent or those who knowingly violate the law." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011). To overcome this shield, a plaintiff must show not only that a constitutional violation occurred, but also that the right was so clearly established that every reasonable official would have understood his conduct was wrong. *Id.* at 741.

Defendants maintain they were merely "performing their job functions" and never violated any clearly established rights. (Doc. 11 at 9.) But to reach that conclusion, they again rely on their own version of events—namely, that Hinrichs was placed on administrative leave and afforded a pre-determination hearing before being terminated. (*Id.* at 11.) As mentioned, those are contested facts. Viewing the complaint in Hinrichs' factor, as the

Court must, the individual defendants handed him a termination notice, cut off his network access, and tossed him from the building, all without a prior hearing. It has long been clear that a public employee with a property interest in his job must receive "some kind of a hearing *prior to* the discharge." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985). If Defendants actually fired Hinrichs on the 18th and then held a sham hearing to rubber-stamp an already finalized decision, they violated a constitutional rule that every reasonable public official should know. *See also Hogan v. City of Fort Walton Beach*, No. 3:18-CV-1332-MCR-HTC, 2019 WL 11638968, at *4 (N.D. Fla. Mar. 29, 2019).

Once discovery sheds light on the actual timeline of events, Defendants are free to raise qualified immunity again at summary judgment. But for now, the motion to dismiss on qualified immunity grounds is denied.

One last issue needs attention. Hinrichs' briefing makes reference to a a "liberty interest claim" that Defendants "failed to address." (Doc. 14 at 12.) Even reading the complaint with generosity, it contains no such claim. From top to bottom, the complaint questions one thing: the County's failure to provide a pre-deprivation hearing. If Hinrichs believes there is some other claim lurking in the background, he must properly move to amend his pleading to include it. As it stands today, however, this is a procedural due process case about the lack of a pre-termination hearing and nothing more.

For these reasons, Defendants' Motion to Dismiss (Doc. 11) is **DENIED**.

**ORDERED** in Fort Myers, Florida on August 25, 2026.

Kyle C. Dudek
United States District Judge